FILED
DISTRICT CLERK OF
JEFFERSON CO TEXAS
12/5/2019 4:16 PM
JAMIE SMITH
DISTRICT CLERK
E-204969

CAUSE NO. E-204969

| | | |
|---|---|---|
| GP INDUSTRIAL CONTRACTORS, INC., <br> Plaintiff, | § § § § § | IN THE DISTRICT COURT |
| vs. | § § | JEFFERSON COUNTY, TEXAS |
| CERTAIN UNDERWRITERS AT LLOYDS, LONDON, <br> Defendant. | § § § § | 172nd JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW GP Industrial Contractors, Inc. (hereinafter "Plaintiff"), and complains of Certain Underwriters at Lloyds, London subscribing severally to insurance policy no. B128410106L17-0204 ("Liberty Syndicate 4472 via Pioneer Underwriting") (hereinafter "Underwriters"). In support of its claims and causes of action, Plaintiff would respectfully show the Court as follows:

### I.
### DISCOVERY LEVEL

1. Plaintiff intends for discovery to be conducted at Level 2, pursuant to Rule 190 of the Texas Rules of Civil Procedure.

### II.
### JURISDICTION AND VENUE

2. This Court has jurisdiction to hear Plaintiff's claims under Texas common law and Texas statutory law. Inarguably, the amount in controversy exceeds the minimum jurisdictional

limits of this Court. Additionally, Venue is mandatory and proper in Jefferson County, Texas, in accordance with Tex. Civ. Prac. & Rem. Code § 15.002, as all or a substantial part of the events giving rise to this suit occurred within this county.

## III.
## PARTIES

3. Plaintiff is an individual whose residence is located in Port Arthur, Jefferson County, Texas.

4. Defendant Certain Underwriters is a foreign corporation, duly registered with the Texas Department of Insurance to do business in Texas, which may be served with process by serving this Original Petition and a copy of the citation on its Registered Agent, Mendes & Mount, LLP, at its registered address, 750 Seventh Avenue, New York, New York 10019.

## IV.
## FACTUAL BACKGROUND

5. Plaintiff is a named insured under a commercial wind deductible buy back insurance policy issued by Underwriters, policy no. B128410106L17-0204 (hereinafter "WDBB Policy").

6. On or about August 26, 2017, a historic Hurricane Harvey hit the Jefferson County area damaging real property including Plaintiff's properties located at 320 Houston Avenue, Port Arthur, TX 77642; 400 Gulfway Drive, Port Arthur, TX 77640; and 501 8th Street, Port Arthur, TX 77642 (hereinafter referred to as the "Property"). Pursuant to the obligations under the Policy, Plaintiff timely filed an insurance claim.

7. Subsequently, Underwriters underpaid Plaintiff's claim by failing to pay for the policy limits after applicable deductible outline under the WDBB Policy.

EXHIBIT B

8. The adjuster, assigned to the claim by Underwriters, conducted a substandard investigation of the Property and damages, prepared a report that failed to include all of the covered damages present during the inspection, and undervalued the damages identified during the inspection.

9. More specifically, upon acceptance of the claim by Underwriters, Underwriters sent out Thomas Koralewski to perform an inspection of the Property and Plaintiff's damages. On October 12, 2017, Thomas Koralewski discovered covered damage resulting from Hurricane Harvey, rendering a net claim payment amount of $94,688.83.

10. In an effort of performing its due diligence, Plaintiff sought an additional and competent opinion from BNRB Construction. BNRB Construction performed a complete and thorough investigation of all properties and buildings finding that the total amount to perform this job properly and to completion was $689,171.11, not $94,688.83 as Underwriters represented.

11. Upon receiving information from BRNB Construction that the claimed damages were in excess of the WDBB Policy's limits with Underwriters, it was clear that Plaintiff's overarching policy through Markel American Insurance Company (hereinafter "MAIC") was also at issue.[1]

12. Defendant continued to perpetuate its severe underpayment of Plaintiff's covered claim and damages by relying on MAIC and its deployment of ProNet Group's Luis Ulloa. Mr. Ulloa completed his site inspection of Plaintiff's Property on August 17, 2018. Defendant and MAIC denied making any further claim payments on Plaintiff's Hurricane Harvey claim based solely on the following findings from Mr. Ulloa:

---

[1] The MAIC Policy kicks in after the damages exceed the $280,000 deductible.

## IV. CONCLUSIONS

Based on our findings and observations as noted in this report, it is our technical opinion that:

- The high wind forces and wind-borne debris associated to the passage of Hurricane Harvey did not result in storm created openings or damage to the roof covering system or building envelope of structures.

August 27, 2018                                    Page 6                                    ProNet File No. 36921

- The multiple ceiling stains and the sagged and stained insulation at various scattered locations inside buildings No. 1, 3, 5, and 6 resulted from rainwater migration that has been bypassing the metal roofs, including during the passing of Harvey, which produced abnormal historic precipitation levels in southeast Texas. Rainwater bypassed the roofing system through pre-existing gaps and openings at failed or missing sealant and gaskets at metal roof anchors and interfaces.

- There are multiple unsealed holes, penetrations, and patches, at various locations along the perimeter of the structures, which have allowed rainwater, including during the passing of Harvey, to enter the buildings bypassing the exterior paneling. These unsealed openings/gaps did not result from, and far predate the passing of Hurricane Harvey.

- There is no evidence of structural damage to the buildings that can be associated to surge/flood from Harvey; however, there is evidence of flood/water related damage (stains, swollen and deteriorated material) along the bottom of file cabinets and at least one wood door inside building No. 1.

13. It is clear that Underwriters' unreasonable initial and incomplete investigation, as well as its reliance on MAIC and its representatives' subsequent unreasonable investigation, were the causes of the denial of full payment of Plaintiff's WDBB Policy limits.

14. Further, Underwriters' actions led directly to a biased, unfair and inequitable evaluation of Plaintiff's losses to the Property from the outset.

15. As a result of the above issues, Plaintiff did not receive the coverage for which it had originally contracted with Underwriters. Therefore, Plaintiff has been forced to file this suit in order to recover damages arising from the above-referenced conduct and from the unfair refusal to pay insurance benefits in accordance with the WDBB Policy.

16. As indicated below, Plaintiff seeks relief under the common law, its WDBB Policy, the Deceptive Trade Practices-Consumer Protection Act and the Texas Insurance Code.

## V.
## CLAIMS AGAINST DEFENDANT

17. Plaintiff hereby incorporates by reference all facts and circumstances set forth under the foregoing paragraphs.

18. All conditions precedent to recovery by Plaintiff have been met or have occurred.

19. All acts by Underwriters were undertaken and completed by its officers, agents, servants, employees, and representatives. Such were either done with the full authorization or ratification of Underwriters and were completed in its normal and routine course and scope of employment with Underwriters.

## 1. BREACH OF CONTRACT

20. According to the insurance coverage that Plaintiff purchased from Underwriters, Underwriters had the absolute duty to reasonably investigate Plaintiff's damages, and to properly pay Plaintiff's policy benefits for the claims made due to the extensive storm-related damages.

21. As a result of Hurricane Harvey, Plaintiff suffered devastating damages under the WDBB Policy.

22. Despite objective evidence of such damages, Underwriters has breached its contractual obligations under the WDBB Policy by failing to pay Plaintiff benefits relating to the cost to properly and completely repair Plaintiff's Property, as well as for related losses. As a result of this material breach, Plaintiff has suffered actual and consequential damages.

## 2. VIOLATIONS OF THE TEXAS DTPA AND TIE-IN-STATUTES

23. Underwriters' collective actions constitute violations of the Texas Deceptive Trade Practices Act, including but not limited to, Sections 17.46(b)(5), (7), (12), (24), and Sections 17.50(a)(3), (4) of the Texas Business & Commerce Code. Specifically in violation of Section 17.46(b), Underwriters collectively engaged in false, misleading, or deceptive acts or practices that included, but were not limited to:

> *17.46(b)(5)* - Representing that its WDBB Policy, coverage and claim adjustment services had sponsorship, approval, characteristics, ingredients, uses, benefits or quantities which they did not have;
>
> *17.46(b)(7)* - Representing that its WDBB Policy, coverage and claim adjustment services were of a particular standard, quality, or grade, and that the Policy was of a particular style or model, when they were of another;
>
> *17.46(b)(12)* - Representing that the WDBB Policy conferred or involved rights, remedies, or obligations which it did not have or involve; and

*17.46(b)(24)* - Failing to disclose information concerning the WDBB Policy, coverage and claim adjustment services which were known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

24. Moreover, and specifically in violation of Section 17.50(a), Underwriters collectively engaged in the use of false, misleading and deceptive acts or practices outlined above, to which Plaintiff relied on to its detriment, in addition to engaging in the following:

*17.50(a)(3)* - An unconscionable action or course of action; and

*17.50(a)(4)* - Violating Chapter 541 of the Texas Insurance Code.

25. As described in this Original Petition, Underwriters represented to Plaintiff that the WDBB Policy and Underwriters' adjusting and investigative services had characteristics or benefits that they actually did not have, which gives Plaintiff the right to recover under Section 17.46(b)(5) of the DTPA.

26. As described in this Original Petition, Underwriters represented to Plaintiff that the WDBB Policy and Underwriters' adjusting and investigative services were of a particular standard, quality, or grade when they were of another, which also stands in violation of Section 17.46(b)(7) of the DTPA.

27. By representing that Underwriters would pay the entire amount needed (minus the WDBB Policy's deductible and prior payment) by Plaintiff to repair the damages caused by Hurricane Harvey and then not doing so, Underwriters has violated Sections 17.46(b)(5), (7), (12), (24) and 17.50(a)(3) - (4) of the DTPA.

28. Underwriters' actions, as described herein, are unconscionable in that it took advantage of Plaintiff's lack of knowledge, ability, and experience to a grossly unfair degree.

Underwriters' unconscionable conduct gives Plaintiff the right to relief under Section 17.50(a)(3) of the DTPA.

29. Underwriters' conduct, acts, omissions, and failures, as described in this Original Petition, are violations of Chapter 541 of the Texas Insurance Code and are unfair practices in the business of insurance in violation of Section 17.50(a)(4) of the DTPA.

30. Plaintiff is a consumer, as defined under the DTPA, who purchased insurance products and services from Underwriters. Plaintiff relied upon the foregoing false, misleading, and deceptive acts or practices conducted by Underwriters to its detriment. As a direct and proximate result of Underwriters' collective acts and conduct, Plaintiff has been damaged in an amount in excess of the minimum jurisdictional limits of this Court, for which Plaintiff now sues. All of the above-described acts, omissions, and failures of Underwriters are a producing cause of Plaintiff's damages that are described in this Original Petition.

31. As a result of Underwriters' collective actions and conduct were committed knowingly and intentionally, Plaintiff is entitled to recover, in addition to all damages described herein, mental anguish damages and additional penalty damages, in an amount not to exceed three times such actual damages, for Underwriters having knowingly committed its conduct. Additionally, Plaintiff is ultimately entitled to recover damages in an amount not to exceed three times the amount of mental anguish and actual damages due to Underwriters having intentionally committed such conduct.

32. As a result of Underwriters' unconscionable, misleading, and deceptive actions and conduct, Plaintiff has been forced to retain the legal services of the undersigned attorneys to protect and pursue these claims on its behalf. Accordingly, Plaintiff also seeks to recover its costs

and reasonable and necessary attorneys' fees as permitted under Section 17.50(d) of the Texas Business & Commerce Code, as well as any other such damages to which Plaintiff may show itself to be justly entitled at law and in equity.

### 3. VIOLATIONS OF TEXAS INSURANCE CODE

A. SECTION 541

33. Underwriters' actions constitute numerous violations of the Texas Insurance Code, including Sections 541.051, 541.060(a) and 541.061. Under Section 541.051, Underwriters committed the following unfair and deceptive acts or practices in the business of insurance:

> *541.051(1)(A)* - Making statements misrepresenting the terms of the WDBB Policy; and
>
> *541.051(1)(B)* - Making statements misrepresenting the benefits of the WDBB Policy.

34. Continuing, in violation of Section 541.060(a), Underwriters engaged in certain unfair settlement practices with respect to a claim by an insured that include the following:

> *541.060(a)(1)* - Misrepresenting a material fact or policy provision relating to coverage;
>
> *541.060(a)(2)(A)* - Failing to make prompt, fair, and equitable settlement of a claim after the insurer's liability is established;
>
> *541.060(a)(2)(B)* - Failing to promptly and fairly settle a claim under one portion of the Policy in order to influence the claimant to settle an additional claim under another portion of the coverage;
>
> *541.060(a)(3)* - Failing to promptly provide a reasonable explanation of the basis for denial of a claim or for the offer of a compromise settlement;
>
> *541.060(a)(4)(A)* - Failing to affirm or deny coverage of a claim or to submit a reservation of rights within reasonable time;
>
> *541.060(a)(4)(B)* - Failing to submit a reservation of rights to a policyholder;

*541.060(a)(5)* - Refusing, failing, or delaying an offer of settlement under applicable first-party coverage on the basis that other coverage may be available or that other parties may be liable for damages, unless specifically provided in the Policy;

*541.060(a)(6)* - Undertaking to enforce a full and final release of a claim from a policyholder when only a partial payment has been made, unless the payment is a compromise settlement of a doubtful or disputed claim; and

*541.060(a)(7)* - Refusing to pay a claim without conducting a reasonable investigation of the details of the claim.

35. Further, Underwriters violated Section 541.061 of the Texas Insurance Code, by committing unfair and deceptive acts or practices in the business of insurance to misrepresent an insurance policy by:

*541.061(1)* - Making an untrue statement of material fact;

*541.061(2)* - Failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made;

*541.061(3)* - Making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact; and

*541.061(5)* - Failing to disclose a matter required by law to be disclosed, including failing to make a disclosure in accordance with another provision of this code.

B. SECTION 542

36. Underwriters' actions constitute numerous violations of Chapter 542 of the Texas Insurance Code, including but not limited to, Sections 542.003 and 542.055 - 542.060. Section 542.003 of the Texas Insurance Code expressly prohibits certain unfair settlement practices as they relate to claims by insured parties of insurance policies. Based upon the conduct of Underwriters to date, Underwriters has thus far committed the following prohibited practices:

*542.003(b)(1)* - Knowingly misrepresenting to a claimant pertinent facts or policy provisions relating to coverage at issue;

*542.003(b)(2)* - Failing to acknowledge with reasonable promptness pertinent communications relating to a claim arising under the WDBB Policy;

*542.003(b)(4)* - Not attempting in good faith to effect a prompt, fair, and equitable settlement of a claim submitted in which liability has become reasonably clear; and

*542.003(b)(5)* - Compelling Plaintiff, a policyholder, to institute a suit to recover the amount due under the WDBB Policy by offering substantially less than the amount ultimately recovered in a suit brought by Plaintiff.

37. Underwriters has violated Sections 542.055 - 542.058 of Chapter 542 of the Texas Insurance Code in its failure to adhere to the statutorily-prescribed deadlines in the handling, adjustment and payment of insurance claims. More specifically, Underwriters committed the following violations:

*542.055(a)(2)* - Failing to commence an investigation of Plaintiff's claim within 15 days after Underwriters received notice of Plaintiff's claim;

*542.055(a)(3)* - Failing to request from the Plaintiff all items, statements, and forms that Underwriters reasonably believes, at the time, was required from Plaintiff, within 15 days after Underwriters received notice of Plaintiff's claim;

*542.056(a)* - Failing to notify Plaintiff in writing of acceptance or rejection of a claim not later than the 15th business day after the date Underwriters received all items, statements, and forms required for Underwriters to secure final proof of loss;

*542.057(a)* - After notifying Plaintiff that it would pay the claim, failure to pay the claim or part of a claim within the fifth business day the notice was made; and

*542.058(a)* - Failing to, after receiving all items, statements, and forms reasonably requested and required under Section 542.055, Underwriters delayed payment of the claim for a period exceeding the period more than 60 days.

38. As a result of the above-referenced violations and acts committed by Underwriters, and in accordance with Section 542.060 of the Texas Insurance Code, Underwriters is liable to pay Plaintiff, in addition to the amount of the claim, simple interest on the amount of the claim as damages each year at the rate determined on the date of judgment by adding five percent to the interest rate determined under Section 304.003, Finance Code, together with reasonable and necessary attorney's fees. Plaintiff is also entitled to prejudgment interest on the amount of the claim, as provided by law. Interest awarded under this subsection as damages accrues beginning on the date the claim was required to be paid.

39. Since a violation of the Texas Insurance Code is a direct violation of the DTPA, and because Underwriters' actions and conduct were committed knowingly and intentionally, Plaintiff is entitled to recover, in addition to all damages described herein, mental anguish damages and additional damages in an amount not to exceed three times the amount of actual damages, for Underwriters having knowingly committed such conduct.

40. Additionally, Plaintiff is entitled to recover damages in an amount not to exceed three times the amount of mental and actual damages for Underwriters having intentionally committed such conduct.

41. As a result of Underwriters' Texas Insurance Code violations, Plaintiff has been forced to retain the legal services of the undersigned attorneys to protect and pursue these claims on its behalf. Accordingly, Plaintiff also seeks to recover its court costs, reasonable and necessary attorneys' fees as permitted under Section 17.50(d) of the Texas Business & Commerce Code or Section 541.152 of the Texas Insurance Code and any other such damages to which Plaintiff may show itself justly entitled by law and in equity.

### 4. BREACH OF THE COMMON LAW DUTY OF GOOD FAITH AND FAIR DEALING

42. Underwriters has breached its common law duty of good faith and fair dealing by underpaying Plaintiff's claim, inadequately adjusting Plaintiff's claim and failing to conduct a reasonable investigation to determine whether there was a reasonable basis for Underwriters' coverage decision.

## VI.
## WAIVER AND ESTOPPEL

43. Plaintiff hereby incorporates by reference all facts and circumstances set forth under the foregoing paragraphs.

44. Underwriters has waived and is estopped from asserting any defenses, conditions, exclusions, or exceptions to coverage not contained in any Reservation of Rights or denial letters to Plaintiff.

## VII.
## DAMAGES

45. Underwriters' acts have been the producing and/or proximate cause of damage to Plaintiff, and Plaintiff seeks an amount in excess of the minimum jurisdictional limits of this Court.

46. More specifically, Plaintiff seeks monetary relief of over $200,000 but not more than $1,000,000.

47. Furthermore, Underwriters' conduct was committed knowingly and intentionally. Accordingly, Underwriters is liable for additional damages under Section 17.50(b)(1) of the DTPA, as well as all operative provisions of the Texas Insurance Code. Plaintiff is, thus, clearly

entitled to statutory penalty interest damages allowed by Section 542.060 of the Texas Insurance Code.

## VIII.
## ATTORNEY FEES

48. In addition, Plaintiff is entitled to all reasonable and necessary attorneys' fees pursuant to the Texas Insurance Code, DTPA, and sections 38.001-.005 of the Civil Practice and Remedies Code.

49. Plaintiff seeks attorney fees on a contingency fee basis. If the attorney fees must be broken down into an hourly rate, Plaintiff seeks attorney fees at $350 per hour.

50. Attorney's fees are awarded to the party as part of the damages owed by an insurance company that violates Chapter 542 of the Texas Insurance Code. We believe it consistent with the statute's purpose to require the insurer to pay a contingency fee, which may be greater than an hourly fee. The spectre of large attorney's fees serves as additional incentive to the insurance company to respond promptly and diligently to its insured's claims. *Mid-Century Ins. Co. v. Barclay*, 880 S.W.2d 807 (Tex. App. 1994).

## IX.
## JURY DEMAND

51. Plaintiff demands a jury trial and tenders the appropriate fee with this Original Petition.

## X.
## WRITTEN DISCOVERY PROPOUNDED TO UNDERWRITERS

A. REQUEST FOR DISCLOSURE

52. Pursuant to the Texas Rules of Civil Procedure, Plaintiff requests that Underwriters disclose all information and/or material as required by Rule 194.2, paragraphs (a) through (l), and to do so within 50 days of this request.

B. REQUEST FOR PRODUCTION

53. Pursuant to the Texas Rules of Civil Procedure, Plaintiff propounds the following Requests for Production:

    a. Please produce Underwriters complete claim files from the home, regional, local offices, and third party adjusters/adjusting firms regarding the claims that are the subject of this matter, including copies of the file jackets, "field" files and notes, and drafts of documents contained in the file for the premises relating to or arising out of Plaintiff's underlying claim;

    b. Please produce the CV of the individual responding to these discovery requests;

    c. Please produce the underwriting files referring or relating in any way to the WDBB Policy at issue in this action, including the file folders in which the underwriting documents are kept and drafts of all documents in the file;

    d. Please produce certified copy of the WDBB Policy pertaining to the claims involved in this suit;

    e. Please produce the electronic diary, including the electronic and paper notes made by Underwriters claims personnel, contractors, and third party adjusters/adjusting firms relating to the Plaintiff's claims;

    f. Please produce all emails and other forms of communication by and between all parties in this matter relating to the underlying event, claims or the Property, which is the subject of this suit;

    g. Please produce the adjusting reports, estimates and appraisals prepared concerning Plaintiff's underlying claim;

h. Please produce the field notes, measurements and file maintained by the adjuster(s) and engineers who physically inspected the subject Property;

i. Please produce the emails, instant messages and internal correspondence pertaining to Plaintiff's underlying claim(s); and

j. Please produce the videotapes, photographs and recordings of Plaintiff or Plaintiff's home, regardless of whether Underwriters intends to offer these items into evidence at trial.

## C. INTERROGATORIES

54. Pursuant to the Texas Rules of Civil Procedure, Plaintiff propounds the following Interrogatories:

a. Please identify any person Underwriters expects to call to testify at the time of trial;

b. Identify the individual responding to these discovery requests on behalf of Defendant, including his or her name, current occupation, and role in the claim;

c. Please identify the persons involved in the investigation and handling of Plaintiff's claims for insurance benefits arising from damage relating to the underlying event, claims or the Property, which is the subject of this suit, and include a brief description of the involvement of each person identified, their employer, and the date(s) of such involvement;

d. If Underwriters or Underwriters' representatives performed any investigative steps in addition to what is reflected in the claims file, please generally describe those investigative steps conducted by Underwriters or any of Underwriters' representatives with respect to the facts surrounding the circumstances of the subject loss. Identify the persons involved in each step;

e. Please identify by date, author, and result the estimates, appraisals, engineering, mold and other reports generated as a result of Underwriters' investigation;

f. Please state the following concerning notice of claims and timing of payment:

    i. The date and manner in which Underwriters received notice of the claim;
    ii. The date and manner in which Underwriters acknowledged receipt of the claim;

      iii.    The date and manner in which Underwriters commenced investigation of the claim;

      iv.    The date and manner in which Underwriters requested from the claimant all items, statements, and forms that Underwriters reasonably believed, at the time, would be required from the claimant; and

      v.    The date and manner in which Underwriters notified the claimant in writing of the acceptance or rejection of the claim.

g. Please identify by date, amount and reason, the insurance proceed payments made by Underwriters, or on Underwriters' behalf, to the Plaintiff;

h. Have Plaintiff's claims for insurance benefits been rejected or denied in full or in part? If so, state the reasons for rejecting/denying the claim;

i. The date Underwriters anticipated litigation;

j. Have any documents (including those maintained electronically) relating to the investigation or handling of Plaintiff's claims for insurance benefits been destroyed or disposed of? If so, please identify what, when and why the document was destroyed, and describe Underwriters' document retention policy;

k. Does Underwriters contend that the insured premises was damaged by storm-related events and/or any excluded peril? If so, state the general factual basis for this contention;

l. Does Underwriters contend that any act or omission by the Plaintiff voided, nullified, waived or breached the WDBB Policy in any way? If so, state the general factual basis for this contention;

m. Does Underwriters contend that the Plaintiff failed to satisfy any condition precedent or covenant of the WDBB Policy in any way? If so, state the general factual basis for this contention;

n. The conditions precedent, if any, you contend Plaintiff has not satisfied under the Policy;

o. How is the performance of the adjuster(s) involved in handling Plaintiff's claims evaluated? State the following:

      i.    What performance measures are used; and
      ii.    Describe Underwriters' bonus or incentive plan for adjusters.

## XI.
## CONCLUSION AND PRAYER

55. Plaintiff prays that judgment be entered against Certain Underwriters at Lloyds, London subscribing severally to WDBB Policy No. B128410106L17-0204 ("Liberty Syndicate 4472 via Pioneer Underwriting"), and that Plaintiff be awarded all of its actual damages, consequential damages, prejudgment interest, additional statutory damages, post judgment interest, reasonable and necessary attorney fees, court costs and for all such other relief, general or specific, in law or in equity, whether pled or un-pled within this Original Petition.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays it be awarded all such relief to which it is due as a result of the acts of Certain Underwriters at Lloyds, London subscribing severally to WDBB Policy No. B128410106L17-0204 ("Liberty Syndicate 4472 via Pioneer Underwriting"), and for all such other relief to which Plaintiff may be justly entitled.

*Respectfully submitted,*

THE VOSS LAW FIRM, P.C.

/s/ C. Bryan Beverly
C. Bryan Beverly
Texas Bar No. 24082688
The Voss Law Center
26619 Interstate 45 South
The Woodlands, Texas 77380
Telephone: (713) 861-0015
Facsimile: (713) 861-0021
bryan@vosslawfirm.com

**ATTORNEY FOR PLAINTIFF**

DVA CONSULTING SERVICES
14013 SILVER FALLS COURT
CONROE, TX 77384


7016 0600 0000 3376 5802



**Certain Underwriters Lloyds of London**
**c/o Mendes & Mount, LLP**
**750 Seventh Avenue**
**New York, NY 10019**

EXHIBIT B